# 25-3151-cv

## United States Court of Appeals
### *for the* Second Circuit

MASSAPEQUA UNION FREE SCHOOL DISTRICT, MASSAPEQUA UNION FREE SCHOOL DISTRICT BOARD OF EDUCATION,

*Plaintiffs-Appellants,*

JEANINE CARAMORE, in her capacity as a Resident/Parent of the School Community,

*Plaintiff,*

-against-

NEW YORK STATE BOARD OF REGENTS; LESTER W. YOUNG, JR., in his official capacity as Chancellor of the New York State Board of Regents; ROGER TILLES, in his official capacity as a member of the New York State Board of Regents; CHRISTINE D. CEA, in her official capacity as a member of the New York State Board of Regents; WADE S. NORWOOD, in his official capacity as a member of the New York State Board of Regents; KATHLEEN M. CASHIN, in her official capacity as a member of the New York State Board of Regents; JAMES E. COTRELL, in his official capacity as a member of the New York State Board of Regents; JUDITH CHIN, in her official capacity as a member of the New York State Board of Regents; CATHERINE COLLINS, in her official capacity as a member of the New York State Board of Regents; ELIZABETH S. HAKANSON, in her official capacity as a member of the New York State Board of Regents; LUIS O. REYES, in his official capacity as a member of the New York State Board of Regents; SUSAN W. MITTLER, in her official capacity as a member of the New York State Board of Regents; FRANCES G. WILLS, in her official capacity as a member of the New York State Board of Regents;

ARAMINA VEGA FERRER, in her official capacity as a member of the New York State Board of Regents; SHINO TANIKAWA, in her official capacity as a member of the New York State Board of Regents; ROGER P. CATANIA, in his official capacity as a member of the New York State Board of Regents; ADRIAN I. HALE, in his official capacity as a member of the New York State Board of Regents; JOSEPHINE VICTORIA FINN, in her official capacity as Vice Chancellor of the New York State Board of Regents,

*Defendants-Appellees,*

*ON APPEAL FROM THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK*

**REPLY BRIEF FOR PLAINTIFFS-APPELLANTS MASSAPEQUA UNION FREE SCHOOL DISTRICT AND MASSAPEQUA BOARD OF EDUCATION**

Oliver Roberts, Esq.
THE ROBERTS LEGAL FIRM
163 W 71st, 1F
New York, New York 10023

Nicholas C. Rigano, Esq.
RIGANO LLC
534 Broad Hollow Road, Suite 100
Melville, New York 11747
(631) 756-5900

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT .....1

ARGUMENT .....3

POINT I: MASSAPEQUA HAS STANDING TO ASSERT ITS CLAIMS .....5

A. Massapequa Plausibly Alleges Standing for Its Title VI Claim .....5

B. Massapequa Plausibly Alleges Standing for Its Claims Based on the MSD-NAGA Agreement .....10

C. Massapequa Plausibly Alleges Additional Injuries Supporting Standing .....15

POINT II: MASSAPEQUA HAS CAPACITY TO BRING ITS CLAIMS .....17

A. Massapequa Has Capacity to Bring Its First Amendment Claims Against the State .....18

B. Massapequa Has Capacity to Assert Its Other Claims .....20

POINT III: MASSAPEQUA PLAUSIBLY STATES CLAIMS FOR RELIEF ..24

A. Massapequa Plausibly States a Title VI Claim .....24

B. Massapequa Plausibly States a § 1981 Claim .....26

C. Massapequa Plausibly States a Dormant Commerce Clause Claim .....27

D. Massapequa Plausibly States an Indian Commerce Clause Claim .....29

CONCLUSION .....31

CERTIFICATE OF COMPLIANCE .....32

# TABLE OF AUTHORITIES

*Apfel v. Prudential-Bache Sec. Inc.*,
81 N.Y.2d 470 (1993) ....................................................................10

*Branson Sch. Dist. RE-82 v. Romer*,
161 F.3d 619 (10th Cir. 1998) .........................................................18, 20

*Cayuga Nation v. Tanner*,
824 F.3d 321 (2d Cir. 2016)..........................................................1, 6

*City of N.Y. v. State of N.Y.*,
86 N.Y.2d 286 (1995) ....................................................................18

*City of Philadelphia v. New Jersey*,
437 U.S. 617 (1978).......................................................................28

*Clarke v. Town of Newburgh*,
No. 84, 2025 WL 3235042 (N.Y. Nov. 20, 2025) ..................................... 22-23

*County of Rensselaer v. Regan*,
80 N.Y.2d 988 (1992) ....................................................................24

*Denning v. Bond Pharmacy, Inc.*,
50 F.4th 445 (5th Cir. 2022) ...........................................................16

*Elias Bochner, 287 7th Ave. Realty LLC v. City of New York*,
118 F.4th 505 (2d Cir. 2024)...........................................................8

*E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*,
160 F.3d 925 (2d Cir. 1998)............................................................20

*Figueroa v. Foster*,
864 F.3d 222 (2d Cir. 2017)..........................................................9, 25

*Gomillion v. Lightfoot*,
364 U.S. 339 (1960).......................................................................21

*Haaland v. Brackeen*,
599 U.S. 255 (2023)......................................................................22, 30

**TABLE OF AUTHORITIES**
(continued)

*In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*,
846 F.3d 58 (2d Cir. 2017)....................18, 20, 21

*Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*,
809 F. Supp. 3d 33 (E.D.N.Y. 2025)....................3

*Moreno-Godoy v. Kartagener*,
7 F.4th 78 (2d Cir. 2021)....................14

*Narcisse v. Progressive Cas. Ins. Co.*,
778 F. Supp. 3d 597 (S.D.N.Y. 2025)....................16

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023)....................21, 27

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*,
612 F.3d 97 (2d Cir. 2010)....................10, 25

*Palin v. N.Y. Times Co.*,
940 F.3d 804 (2d Cir. 2019)....................24

*Register.com, Inc. v. Verio, Inc.*,
356 F.3d 393 (2d Cir. 2004)....................10

*Seminole Tribe of Fla. v. Florida*,
517 U.S. 44 (1996)....................30

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................16

*Travelers Int'l, A.G. v. Trans World Airlines, Inc.*,
41 F.3d 1570 (2d Cir. 1994)....................20

*Tweed-New Haven Airport Auth. v. Tong*,
930 F.3d 65 (2d Cir. 2019).................... *passim*

# TABLE OF AUTHORITIES
(continued)

**<u>Regulations and Rules</u>**

8 N.Y.C.R.R. § 123 ................................................................................ *passim*

42 U.S.C. § 1981 ................................................................................ *passim*

42 U.S.C. § 2000d ................................................................................ 25

## PRELIMINARY STATEMENT

Defendants-Appellees portray this case as a speculative dispute about future federal enforcement. But the Massapequa Union Free School District and Massapequa Union Free School District Board of Education ("Massapequa") are *now* subject to 8 N.Y.C.R.R. § 123 ("Part 123"), which prohibits New York public school districts from using Indigenous names, logos, and mascots. Part 123 compels Massapequa to abandon its historic and respectful use of the "Chiefs" name and logo. If Massapequa complies, it faces federal civil-rights consequences under Title VI and impairs its agreement with the Native American Guardian's Association ("NAGA"). If it refuses, it faces state sanctions, including loss of funding and removal of school officials. This is a present regulatory dilemma sufficient to establish standing. Indeed, this Court has held that "an actual . . . enforcement action is not a prerequisite to challenging the law," that enforcement is "presumed," and that standing for pre-enforcement review is "low" and "forgiving to plaintiffs." *Tweed-New Haven Airport Auth. v. Tong*, 930 F.3d 65, 71 (2d Cir. 2019); *Cayuga Nation v. Tanner*, 824 F.3d 321, 331 (2d Cir. 2016).

The federal enforcement risk is concrete. The U.S. Department of Education's Office for Civil Rights ("OCR") has already determined that Part 123 violates Title VI, and that Connetquot Central School District, a similarly situated former co-plaintiff in this litigation, violated Title VI after it dropped its challenge to Part 123

and changed its Indigenous name to comply. OCR has since referred the matter to the Department of Justice for further proceedings on May 29, 2026.

Defendants-Appellees attempt to avoid these obvious implications by arguing that Connetquot complied "voluntarily," while Massapequa would comply only unwillingly. But Title VI contains no exception for reluctant violations compelled by state law. And Connetquot's "voluntary" compliance was under threat of enforcement just like Massapequa is now. The relevant point is that OCR has treated the very conduct Part 123 requires as a Title VI violation. Massapequa need not comply with Part 123, expose itself to the same enforcement risk, and only then seek judicial review.

Nor do Defendants-Appellees defeat standing by arguing that OCR supports Massapequa's position. OCR supports Massapequa's position because Massapequa is resisting Part 123 and complying with Title VI. Pre-enforcement standing does not disappear simply because the plaintiff currently resists the challenged command. The injury arises from being subject to that command and forced to choose between conflicting mandates.

The district court also erred by invalidating Massapequa's agreement with NAGA at the Rule 15 stage. Massapequa plausibly alleges a valid agreement supported by consideration: Massapequa agreed to continue using the Chiefs name and logo, maintain educational programming concerning Native American history,

and participate in an ongoing relationship with NAGA; NAGA provided consent, support, authorization, and continuing consultation. The district court instead treated the agreement as illusory, drew inferences against Massapequa, and then used that merits determination to reject standing. That was improper at the Rule 15 stage.

Leave to amend should have been freely given. This Court should reverse and remand with instructions to permit Massapequa to file its proposed amended complaint.

## ARGUMENT

The district court improperly denied Massapequa leave to amend on futility grounds. *See* J.A. 331 (*Massapequa Union Free Sch. Dist. v. New York State Bd. of Regents*, 809 F. Supp. 3d 33, 33 (E.D.N.Y. 2025) [hereinafter, the "November Order"]).[1] That ruling should be reversed. At the Rule 15 stage, Massapequa was required only to plausibly allege claims for relief, with its factual allegations accepted as true and all reasonable inferences drawn in its favor. The proposed amended complaint ("PAC") satisfies that standard.[2]

First, Massapequa plausibly alleges Article III standing. Part 123 applies to Massapequa now, commands it to discontinue the Chiefs name and logo, and

[1] The district court's November 14, 2025 Order, at J.A. 331-422, is referenced as "November Order" and cited "November Order, p __." to the internal pagination of the appendix version of the Order.

[2] The Proposed Amended Complaint, at J.A. 129-87, is cited as "PAC ¶ __."

exposes it to state sanctions if it refuses. At the same time, the U.S. Department of Education ("USDOE") has determined that compliance with Part 123 violates Title VI and has applied that determination to another similarly situated school district that changed its Indigenous name in response to Part 123. Massapequa therefore faces the precise regulatory dilemma that pre-enforcement standing doctrine is designed to address. Massapequa also plausibly alleges standing based on injuries arising from the MSD-NAGA Agreement. The PAC alleges a valid agreement that Part 123 impairs by forcing Massapequa to breach its obligations under the Agreement.

Second, Massapequa has capacity to assert its claims. The district court correctly recognized that Massapequa's Title VI, § 1981, dormant Commerce Clause, and Indian Commerce Clause claims are not barred by incapacity because they fall within the Supremacy Clause framework. Defendants-Appellees did not challenge those claims on capacity grounds below and cannot now recast them as ordinary municipal-rights claims against the State. Massapequa's First Amendment claim also falls within the constitutional-proscription exception because Part 123 requires Massapequa to unconstitutionally restrict speech by school officers and employees.

Third, the PAC plausibly states claims for relief. Defendants-Appellees' arguments require resolving disputed merits questions against Massapequa at the pleading stage, which Rule 15 does not permit.

Because Massapequa plausibly alleges standing, capacity, and viable claims, leave to amend should have been granted.

## <u>POINT I: MASSAPEQUA HAS STANDING TO ASSERT ITS CLAIMS</u>

### A. Massapequa Plausibly Alleges Standing for Its Title VI Claim

Massapequa plausibly alleges standing for its Title VI claim because Part 123 places it in a present regulatory dilemma. If Massapequa refuses to comply with Part 123, it faces state sanctions. If it complies, it risks federal civil-rights consequences under Title VI. That is enough for pre-enforcement standing.

Defendants-Appellees insist that Massapequa "will not be subject to a federal enforcement action" and that "there is no indication that the federal government could or would pursue a Title VI enforcement action against Massapequa." Appellees' Br. (Br.) at 30. That argument misstates the relevant injury. Massapequa is, of course, not presently facing federal enforcement because it has not yet violated Title VI. Massapequa, though, is under threat of federal enforcement now if it complies with Part 123.

This is fully supported by the record. In May 2025, USDOE determined that New York's ban on Native American mascots and logos violates Title VI. November

Order, p. 80. USDOE then opened an investigation into Connetquot Central School District after Connetquot dismissed its challenge to Part 123 and changed its "Thunderbirds" name in compliance with Part 123. Massapequa notified the district court of this development only days later in a letter dated July 23, 2025. *See* J.A. 321-30. In February 2026, USDOE found that Connetquot violated Title VI, s*ee* J.A. 437, and just days ago on May 29, 2026, USDOE referred Connetquot to the U.S. Department of Justice for violating Title VI.[3]

That sequence demonstrates the precise risk Massapequa faces: a New York school district complied with Part 123, and USDOE treated that compliance as a Title VI violation. Massapequa need not expose itself to the same federal enforcement before seeking judicial relief. *Tong*, 930 F.3d at 71 ("an actual . . . enforcement action is not a prerequisite to challenging the law.") (citations omitted); *Tanner*, 824 F.3d at 331 (the standing threshold in pre-enforcement cases is "low" and "forgiving to plaintiffs" because courts are generally "willing to presume that the government will enforce the law") (citation omitted).

Defendants-Appellees' attempt to distinguish Connetquot because it supposedly complied "voluntarily" fails legally and factually. Br. at 34. As a legal

---

[3] Alex Mitchell, *Long Island school district referred to DOJ over alleged civil rights violation for banning Thunderbirds logos,* N.Y. POST, May 29, 2026, https://nypost.com/2026/05/29/us-news/long-island-school-district-referred-to-doj-over-alleged-civil-rights-violation-for-banning-thunderbirds-logos/.

matter, Title VI contains no exception for reluctant violations compelled by state law, and Defendants-Appellees cite no authority otherwise. As a factual matter, Connetquot did not abandon its position as a matter of preference. Like Massapequa, Connetquot challenged Part 123, then reversed course under pressure from Part 123. After Connetquot settled with the State, a Connetquot Board member publicly stated, "I am requesting we hold off on any work until last minute to see if [the ban] is overturned."[4] Connetquot complied because Part 123 forced compliance, and OCR treated that compliance as unlawful under Title VI.

Nor does USDOE's current support for Massapequa's position defeat standing. Br. at 31. USDOE supports Massapequa's position because Massapequa is resisting Part 123 and complying with Title VI. That support confirms the federal-state conflict. It does not eliminate the credible risk of federal consequences if Massapequa is forced to do what Defendants-Appellees demand: abandon the Chiefs name and logo in compliance with Part 123. Connetquot previously had the support of USDOE, and then it lost that support once Connetquot complied with Part 123.

Defendants-Appellees' own authority confirms that Massapequa has established standing. Defendants-Appellees cite *Elias Bochner, 287 7th Ave. Realty*

---

[4] Alex Mitchell, *Long Island school agrees to drop Thunderbirds mascot name for 'T-birds' amid state pressure mounts,* N.Y. POST, Sep. 3, 2025, https://nypost.com/2025/09/03/us-news/li-school-takes-state-deal-to-drop-native-american-logo/.

*LLC v. City of New York*, 118 F.4th 505, 519 (2d Cir. 2024), for the proposition that courts may reject standing where the government lacks any intent to enforce the challenged law. Br. at 31. But *Elias Bochner* held that the plaintiffs "sufficiently demonstrated standing at the pleadings stage" because the challenged law proscribed conduct, the plaintiffs alleged a threat of enforcement, and the City had not disavowed enforcement. 118 F.4th at 522. The later standing defect in *Elias Bochner* arose only at summary judgment, after the plaintiffs' burden increased, the plaintiffs failed to identify any evidence of prior enforcement by the City, and the City "unqualifiedly disavowed any intent to enforce" the law against them. *Id.* at 525.

This case is materially different. Massapequa is at the Rule 15 pleading stage, Defendants-Appellees have not disavowed enforcement, and Part 123 carries express enforcement consequences. In addition, USDOE has not disavowed Title VI enforcement if Massapequa complies with Part 123; it has announced the opposite position and has enforced against a similarly situated school district, Connetquot. *Elias Bochner* therefore supports Massapequa, not Defendants-Appellees.

Defendants-Appellees also misread *Tong*, 930 F.3d at 65. See Br. at 31-32. They argue that *Tong* is distinguishable because the state law there specifically targeted the airport, while USDOE has not yet targeted Massapequa. But *Tong* confirms that a regulated public entity has standing when state law places it in conflict with federal law and exposes it to enforcement consequences. Part 123

applies directly to Massapequa, commands it to discontinue the Chiefs name and logo, and threatens state sanctions if Massapequa refuses. That is undisputed in this case. At the same time, USDOE has determined that the conduct Part 123 requires violates Title VI and has applied that position to another similarly situated school district. As confirmed by *Tong*, Massapequa need not wait until USDOE names it in an enforcement action before seeking relief.

Defendants-Appellees' artificial distinction between OCR's investigation of New York State Education Department ("NYSED") and a potential action against Massapequa likewise fails. Br. at 31. USDOE's position that Part 123 violates Title VI is not limited to NYSED in the abstract. It has already applied its Title VI determination to a New York school district that complied with Part 123. Connetquot thus presents the same enforcement sequence Massapequa seeks to avoid here.

Finally, Defendants-Appellees try to recast Massapequa's Title VI theory as a prudential-standing problem. That is a strawman. Massapequa is not asserting third-party rights. It asserts a preemption claim: Part 123 is invalid because compliance with the state regulation places Massapequa in direct conflict with Title VI. The district court understood the claim that way, recognizing that Massapequa's preemption theory is properly grounded in the Supremacy Clause. *See* November Order, p. 78-79 (citing *Figueroa v. Foster*, 864 F.3d 222, 227 (2d Cir. 2017) (quoting

*N.Y. SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 103-04 (2d Cir. 2010) (quotations omitted)). Massapequa has standing to assert its Title VI claim.

### B. Massapequa Plausibly Alleges Standing for Its Claims Based on the MSD-NAGA Agreement

Massapequa plausibly alleges standing for its Title VI, § 1981, dormant Commerce Clause, and Indian Commerce Clause claims based on injuries arising from Part 123's impairment of the MSD-NAGA Agreement. The PAC alleges that Massapequa entered into that Agreement with the NAGA on May 15, 2025; that both parties intended to be legally bound; and that the Agreement contains offer, acceptance, mutual assent, consideration, and ongoing obligations. PAC ¶¶ 100, 106-08, 110-11; *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). At the Rule 15 stage, those allegations had to be accepted as true, with all reasonable inferences drawn in Massapequa's favor.

The district court did the opposite. It deemed the Agreement invalid and concluded that it "gives rise to no injury and cannot confer standing." November Order, p. 5; *see* Br. at 38. That was error. Defendants-Appellees' argument reduces the Agreement to a single question: whether NAGA owned a trademark or proprietary right in the Chiefs name and logo. But New York contract law does not require consideration to take the form of a trademark license or property conveyance. *Apfel v. Prudential-Bache Sec. Inc.*, 81 N.Y.2d 470, 476, 616 N.E.2d 1095, 1097 (1993) ("It is enough that something of 'real value in the eye of the law' was

exchanged.") (citations omitted); *id.* ("The fact that the sellers may not have had a property right in what they sold does not, by itself, render the contract void for lack of consideration.")

The PAC alleges adequate consideration. Massapequa agreed to "*continue*[] its current educational programming and instruction concerning Native American history and culture" and to "*continue* to use the 'Chiefs' name and logo as the District's official name and logo for all school-related purposes, including but not limited to educational uses, athletic uses, community uses, and in any new programs hereafter developed." PAC ¶ 107 (emphasis added). Those are continuing obligations. They also confer a benefit on NAGA, whose stated mission is to promote public awareness and education concerning Native American history and culture and to support respectful use of Native American names and imagery. PAC ¶¶ 101-02. By formalizing Massapequa's *continued* use and educational commitments, the Agreement advanced NAGA's stated mission through a concrete relationship with a public school district.

NAGA likewise conferred benefits on Massapequa. It reviewed Massapequa's use of the Chiefs name and logo, provided express consent and support through a Board-approved agreement, and agreed to an ongoing consultative relationship concerning Massapequa's educational programming. PAC ¶¶ 100-10. In the face of sustained public and governmental criticism of school districts that use Native

American names and logos, that support has concrete value to Massapequa and its community, which respectfully displays the Chiefs name and logo. It provides a formal partnership, public validation, and educational consulting support from an organization devoted to these issues. Those benefits are not legally meaningless simply because NAGA did not convey a trademark right. In fact, Part 123 itself recognizes the significance of Native American approval agreements by allowing certain school districts to continue using Indigenous names, logos, or mascots when qualifying approval exists. *See* § 123.4(b). At minimum, Massapequa plausibly alleges that NAGA's support, approval, and consultation had concrete value.

The Agreement also required further ongoing performance. NAGA and Massapequa agreed to meet "at least once per year to review and discuss the educational programming and instruction." PAC ¶ 107. That annual-meeting provision supports the existence of consideration because it requires continued engagement by both parties and provides reciprocal benefits: NAGA advances its educational mission, and Massapequa receives consultation from an organization devoted to promoting Native American imagery and education. Defendants-Appellees' attempt to characterize that provision as a one-sided obligation is wrong, and in fact, confirms that the Agreement imposes real obligations. See Br. at 41 (acknowledging that this provision imposes an obligation on Massapequa). The

Agreement provides that NAGA and Massapequa "shall meet," language that necessarily contemplates participation by both parties.

Defendants-Appellees attempt to dismiss the Agreement as "entirely optional." Br. at 39. They first argue that if Massapequa ceases use of the Chiefs name and logo, "NAGA's authorization to use the name and logo 'will automatically be withdrawn'," and that "nothing in the Agreement stops Massapequa from continuing to utilize the Chiefs name and logo without NAGA's consent." *Id.* That argument misreads the plain text of the Agreement. The very provision Defendants-Appellees cite confirms a contractual consequence for nonperformance. If Massapequa stops using the Chiefs name and logo, it automatically loses the benefits of the contract NAGA provides. That is not evidence that no binding promise existed. It is evidence of a reciprocal exchange. The district court acknowledged as much, stating that "the moment Massapequa stops using the Chiefs mascot, it no longer has any rights from NAGA to use the Chiefs mascot." November Order, p. 54. The PAC alleges the same point: "To satisfy their contractual obligations under the NAGA Agreement, the Plaintiffs *must* continue to use the Chiefs name and logo." PAC ¶ 111 (emphasis in original). Nothing in the Agreement states that NAGA lacks all recourse if Massapequa breaches that obligation.

Nor does the Agreement's remedial language render the contract "illusory." Defendants-Appellees rely on language providing that NAGA has no cause of action

to "compel or require" Massapequa to provide educational programming. Br. at 39. But Defendants-Appellees, like the district court, misread the Agreement. The operative language provides that, if Massapequa breaches its obligations, NAGA "will have no cause of action of any kind and nature to *compel or require* the District to *provide any kind of educational programing or instruction*." PAC ¶ 107 (emphasis added). That language is narrow. It limits only one form of relief: an action compelling Massapequa to continue providing educational programming or instruction. It does not state that the Agreement is optional, that Massapequa's obligations are unenforceable, or that NAGA lacks all remedies. To the contrary, NAGA can pursue general and monetary damages stemming from Massapequa's breach, including loss of the bargained-for cultural relationship, loss of educational and consultative benefits, reputational and goodwill harm, and reliance damages for resources expended in negotiating, approving, and supporting the Agreement. *See Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021) ("it is well established that the non-breaching party may recover 'general damages which are the natural and probable consequence of the breach.'") (citation omitted).

The district court's error is apparent from its mischaracterization of the Agreement. The court described the provision as stating that NAGA "will have no cause of action of any kind" to compel Massapequa "to comply with the terms of the Agreement." November Order, p. 51. The district court then concluded "either party

may cancel the contract." *Id.* But that is not what the text of the Agreement says. PAC ¶ 107. The district court transformed a narrow remedial limitation into a sweeping conclusion that the Agreement was invalid. That was plain error.

Finally, Massapequa does not contend that contract validity can never be addressed at this stage. See Br. at 42. The point is narrower: the district court improperly resolved merits questions of consideration, intent, and enforceability against Massapequa at the Rule 15 stage. Appellants' Opening Br. (Opening Br.) at 40-41. Massapequa plausibly alleges contract-based injuries sufficient for standing.

### C. Massapequa Plausibly Alleges Additional Injuries Supporting Standing

Massapequa plausibly alleges additional concrete injuries traceable to Part 123. This includes compliance costs, impairment of contractual rights, legal exposure, reputational and goodwill harms, disruption to District operations, and the burden of enforcing restrictions against school officers and employees. PAC ¶¶ 74, 114-15, 122, 241-43. Any one of those injuries is sufficient to establish standing at this stage.

First, Massapequa plausibly alleges compliance costs. Defendants-Appellees characterize those allegations as "vague and speculative." Br. at 43. They are not. Part 123 requires Massapequa to discontinue the Chiefs name and logo. Compliance necessarily requires Massapequa to remove, replace, or alter uses of that name and logo across school property, uniforms, athletic materials, and other school-related

contexts. The PAC specifically alleges that NYSED provides no funding for that mandate, requiring school districts to divert funds to comply, and that Massapequa will incur "substantial costs" replacing the Chiefs name and logo. PAC ¶¶ 72, 114. Those costs flow directly from Part 123.

Second, Massapequa plausibly alleges legal and contractual injuries. Defendants-Appellees respond only by repeating their merits arguments that the MSD-NAGA Agreement is illusory and that Massapequa faces no credible Title VI risk. See Br. at 43. Both points fail for the reasons already explained. The PAC plausibly alleges a valid agreement that Part 123 impairs, which is sufficient injury for Article III purposes. *Narcisse v. Progressive Cas. Ins. Co.*, 778 F. Supp. 3d 597, 607 (S.D.N.Y. 2025) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("Violation of private contract rights is a 'harm traditionally recognized as providing a basis for a lawsuit in American courts,' whether or not the plaintiff suffered a financial loss as a result.")); *Denning v. Bond Pharmacy, Inc.*, 50 F.4th 445, 451 (5th Cir. 2022) ("[T]raditional and recent precedent arising from both the Fifth Circuit and the Supreme Court reflect that a breach of contract is a sufficient injury for standing purposes."). Additionally, USDOE has already determined that compliance with Part 123 violates Title VI and has applied that determination to Connetquot. Massapequa's resulting legal exposure and contractual impairment are concrete injuries, not speculation.

Third, Massapequa plausibly alleges injury from violating the First Amendment and enforcing Part 123 against its own officers and employees. Massapequa is not asserting its own First Amendment rights against the State. It alleges that Part 123 requires the District to enforce unconstitutional speech restrictions against school officers and employees. *See* PAC ¶¶ 14, 67, 72-73, 88, 90, 114, 116, 120-21. Former plaintiff Caramore's allegations illustrate the point: she alleges that, as a sitting board member, she intends to wear Chiefs apparel on campus and at school events. PAC ¶¶ 178-80. Her later dismissal of her individual claims did not erase the pleaded facts showing how Part 123 operates, the enforcement burden it places on Massapequa, and the resulting legal exposure Massapequa faces from enforcing an unconstitutional mandate.

Indeed, the district court recognized that "any legally cognizable injury will suffice," including monetary injury, property injury, or constitutional injury. November Order, p. 41 (citation omitted). Massapequa alleges several such injuries. PAC ¶¶ 74, 114-15, 122. At the Rule 15 stage, those allegations were sufficient to establish standing.

**POINT II: MASSAPEQUA HAS CAPACITY TO BRING ITS CLAIMS**

Defendants-Appellees' capacity argument fails. New York law generally bars municipalities from challenging state law on constitutional grounds. But that bar does not apply "where the public corporation asserts that, if it is obliged to comply

with the statute, that very compliance will force the corporation to violate a constitutional proscription." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d 58, 63-64 (2d Cir. 2017); *City of N.Y. v. State of N.Y.*, 86 N.Y.2d 286, 287 (1995). Nor does it bar a political subdivision from invoking the Supremacy Clause to challenge state law that conflicts with federal law. *Tong*, 930 F.3d at 73 ("[A] subdivision may sue its state under the Supremacy Clause."); *see also Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 628-29 (10th Cir. 1998).

Both principles apply here. Part 123 requires Massapequa to restrict speech by school officers and employees in violation of the First Amendment, thereby triggering the constitutional-proscription exception. And Massapequa's Title VI, § 1981, dormant Commerce Clause, and Indian Commerce Clause claims are Supremacy Clause claims alleging that Part 123 is invalid because it conflicts with federal law.

### A. Massapequa Has Capacity to Bring Its First Amendment Claims Against the State

The district court erred in concluding that Massapequa lacks capacity to assert its First Amendment claims. The PAC alleges that compliance with Part 123 would force Massapequa to violate the First Amendment rights of its officers and employees. PAC ¶¶ 116-67. That satisfies the constitutional-proscription exception.

Defendants-Appellees respond that "[t]he First Amendment does not prohibit public employers from restricting public employees' speech pursuant to their official

duties." Br. at 49. But that argument ignores the allegations and the text of Part 123. The PAC alleges that school officers and board members, including former plaintiff Caramore, attend school events and intend to campaign, wear Chiefs apparel, and use the Chiefs name and logo in contexts that are not speech pursuant to official duties. PAC ¶¶ 178-80. Part 123 is not limited to official-duty speech. It applies to school officers and employees when they are on school property or at school functions, regardless of whether they speak in official or personal capacity. 8 N.Y.C.R.R. § 123.5 ("Public schools shall prohibit school officers and employees when located on school property or at a school function from utilizing or promoting any Indigenous name, logo, or mascot.").

That breadth creates the capacity-conferring constitutional conflict. If Massapequa complies with Part 123, it must restrict speech that the PAC alleges is protected. Defendants-Appellees' proposed limiting construction cannot overcome the regulation's text or the pleaded factual allegations.

Defendants-Appellees also argue that Massapequa can no longer rely on allegations involving Caramore because she voluntarily dismissed her individual claims. Br. at 50. That is wrong. Caramore's dismissal did not erase factual allegations in the PAC concerning how Part 123 operates and what Massapequa would be required to enforce and the legal exposure resulting therefrom. In any event, Caramore is not hypothetical. She is *still* a sitting board member who alleges

that she intended to wear and use Chiefs apparel and imagery in connection with school events and campaign-related activity. PAC ¶¶ 178-80. Part 123 requires Massapequa to restrict that speech and "that very compliance will force [Massapequa] to violate a constitutional proscription." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d at 63-64.

**B. Massapequa Has Capacity to Assert Its Other Claims**

Massapequa also has capacity to assert its Title VI, § 1981, dormant Commerce Clause, and Indian Commerce Clause claims. As the district court observed, "Defendants do not challenge these claims on capacity grounds." November Order, p. 32. Defendants-Appellees therefore forfeited any capacity objection. *See Travelers Int'l, A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1580 (2d Cir. 1994) ("The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver."); *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 936 (2d Cir. 1998) ("Lack of capacity is generally not considered jurisdictional and is therefore waived if not specifically raised.")

In any event, the district court correctly concluded that those claims "are not barred by incapacity to sue" because they fall within the Supremacy Clause framework recognized in *Tong*. *Id.* As the district court explained, "a subdivision may sue its state under the Supremacy Clause." *Id.* at 28; see *Tong*, 930 F.3d at 73; *Branson Sch. Dist.*, 161 F.3d at 628-29. In *Tong*, the Second Circuit rejected the

premise that political subdivisions are categorically barred from suing their creating states and explained that this view was "put to rest" by *Gomillion v. Lightfoot*, 364 U.S. 339 (1960). 930 F.3d at 72. The court further held that Supremacy Clause suits are "one of the main ways" to ensure that states do not enforce laws preempted by federal law. *Id.* at 73.

That rule controls here. Title VI prohibits federally-funded state programs from discriminating on the basis of race or national origin. Section 1981 protects the equal right to make and enforce contracts and prevents states from discriminating in such contracting. The dormant Commerce Clause prohibits state laws that discriminate against or unduly burden interstate commerce. The Indian Commerce Clause commits authority over Indian commerce and tribal affairs to the federal government. Massapequa alleges that Part 123 conflicts with those federal limits. These claims are proper within the Supremacy Clause framework recognized in *Tong*.

Separately, the dormant Commerce Clause and Indian Commerce Clause claims also fit within the constitutional-proscription exception. See *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 846 F.3d at 63-64. The dormant Commerce Clause is a constitutional prohibition on state laws that discriminate against or unduly burden interstate commerce. *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 364 (2023) ("[N]o State may use its laws to discriminate

purposefully against out-of-state economic interests.”). The Indian Commerce Clause is also a constitutional proscription on state regulation in a field committed to federal authority. See *Haaland v. Brackeen*, 599 U.S. 255, 273 (2023) (“‘[V]irtually all authority over Indian commerce and Indian tribes’ lies with the Federal Government.”). Thus, even apart from *Tong*, Massapequa has capacity to assert these claims.

Defendants-Appellees’ capacity argument based on *Clarke* is an eleventh-hour attempt to revive a forfeited objection through an inapposite case. Br. at 52-53 (citing *Clarke v. Town of Newburgh*, No. 84, 2025 WL 3235042, at *2 (N.Y. Nov. 20, 2025)). In *Clarke*, the court in dicta rejected the Town of Newburgh’s assertion of Supremacy Clause capacity. *Id.* But the parties did not cite, and the *Clarke* court did not consider, *Tong*. That omission is not surprising. Newburgh’s preemption theory rested on the Fourteenth Amendment, and this Court has already recognized that *Tong* “did not disturb prior Second Circuit caselaw that a municipal entity may not sue its state to vindicate its own rights under the Fourteenth Amendment.” November Order, p. 28, n.13 (citing *Tong,* 930 F.3d at 73 n.7). *Tong* therefore had no application in *Clarke* because the Fourteenth Amendment cannot supply Supremacy Clause capacity.

Massapequa’s case is materially different from *Clarke*. Massapequa’s claims rest on Title VI, § 1981, the dormant Commerce Clause, and the Indian Commerce

Clause, each of which alleges that Part 123 conflicts with federal law and is invalid under the Supremacy Clause. Those are precisely the type of claims *Tong* permits a political subdivision to bring against its state. *Clarke* does not hold otherwise and does not affect that conclusion. *Clarke* is distinguishable for two additional reasons. *First*, unlike Massapequa here, Newburgh was not under threat of federal enforcement. It merely speculated that it could someday face undefined liability, a point the *Clarke* court found material in rejecting Newburgh's claims. *Clarke*, 2025 WL 3235042, at *4. *Second*, Newburgh was at its "lowest ebb" of authority to challenge the statute because it solely sought to summarily invalidate the state law, which is unlike Massapequa's as-applied challenges here. *Id.* at *3. *Clarke* is inapplicable, and *Tong* confirms that Massapequa has capacity to bring its claims.

Separately, Massapequa also has capacity because compliance with Part 123 threatens its "proprietary interest" in its federal funding. *See* PAC ¶ 186; *see* U.S. Department of Justice Civil Rights Division, *Title VI of the Civil Rights Act of 1964*, https://www.justice.gov/crt/fcs/TitleVI#:~:text=Executive%20Order%2014168.-,Overview%20of%20Title%20VI,VI%20itself%20prohibits%20intentional%20discrimination (last visited June 3, 2026, 4:50 PM) ("If a recipient of federal assistance is found to have discriminated and voluntary compliance cannot be achieved, the federal agency providing the assistance should either initiate fund termination

proceedings or refer the matter to the Department of Justice for appropriate legal action"); *County of Rensselaer v. Regan*, 80 N.Y.2d 988, 991 (1992).

## POINT III: MASSAPEQUA PLAUSIBLY STATES CLAIMS FOR RELIEF

Defendants-Appellees' alternative merits argument also fails. At this Rule 15 stage, the court must "construe the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (quotations and alteration omitted). Defendants-Appellees instead ask this Court to resolve disputed merits questions against Massapequa. That is especially improper because the district court recognized that "Part 123 may have serious constitutional defects," that it "appears to enact a legal classification based on race or ancestry," and that it "may also abridge the First Amendment free speech rights of Massapequa School Board members and District employees." November Order, p. 3. The district court expressly declined to resolve those "difficult questions." *Id.* This Court should not affirm on an alternative merits ground that would require resolving them against Massapequa in the first instance. Even if the Court reaches those issues, however, the PAC plausibly states each claim.

### A. Massapequa Plausibly States a Title VI Claim

Defendants-Appellees argue that Massapequa lacks a private right of action under Title VI, but that mischaracterizes the claim. Massapequa asserts a preemption

claim: Part 123 is invalid because it requires conduct that Title VI prohibits. As the district court recognized, "[u]nder the Supremacy Clause of the Constitution, state and local laws that conflict with federal law are without effect." November Order, p. 78 (citing *Figueroa*, 864 F.3d at 227 (quoting *N.Y. SMSA Ltd. P'ship*, 612 F.3d at 103-04 (quotations omitted)).

The PAC plausibly alleges that conflict. Title VI prohibits discrimination on the basis of race or national origin in programs receiving federal assistance. 42 U.S.C. § 2000d. The PAC alleges that Part 123 requires Massapequa to eliminate Indigenous names, logos, and mascots while leaving untouched names, symbols, and imagery associated with every other racial or national-origin group. PAC ¶¶ 189-92. It further alleges that Part 123 requires Massapequa to discriminate in contracting with Indigenous individuals and organizations, including by impairing the MSD-NAGA Agreement, while permitting comparable agreements with groups of other races or national origins. *Id.* ¶¶ 194-97, 200, 205. And it alleges that Part 123 requires Massapequa to restrict certain Indigenous-affiliated expression by school officers and employees. *Id.* ¶¶ 189, 208-10. Ultimately, Massapequa alleges it cannot comply with both mandates, and thus Title VI preempts Part 123. *Id.* ¶ 212. This is demonstrated by federal enforcement discussed *supra.*

Those allegations are sufficient at the pleading stage.

### B. Massapequa Plausibly States a § 1981 Claim

Defendants-Appellees' argument rests principally on their assertion that the MSD-NAGA Agreement is "illusory." Br. at 61. That premise fails for the reasons already explained. The PAC plausibly alleges a valid, consideration-supported agreement between Massapequa and NAGA, and Part 123 impairs that agreement.

Section 1981 guarantees that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The PAC alleges that Part 123 interferes with that right by restricting agreements involving Indigenous names, logos, mascots, and tribal or Indigenous approval in a way it does not restrict comparable agreements with groups of any other race or national origin. PAC ¶¶ 233, 236-38. It further alleges that Part 123 compels Massapequa to breach or impair the MSD-NAGA Agreement because of NAGA's Indigenous status and the Agreement's subject matter: Massapequa's continued use of Indigenous-affiliated names and imagery. *Id.* ¶ 239.

Those allegations plausibly state a § 1981 preemption claim.

### C. Massapequa Plausibly States a Dormant Commerce Clause Claim

Defendants-Appellees argue that Massapequa's claim fails because the PAC does not plead a "competitive market" for Indigenous names, logos, or mascots. Br. at 63. But dormant Commerce Clause pleading does not require an antitrust-style market definition. At the pleading stage, Massapequa is required only to "plead facts 'plausibly' suggesting a substantial harm to interstate commerce." *Nat'l Pork Producers Council*, 598 U.S. at 385.

The PAC satisfies that standard. Part 123.4(b) discriminates against and burdens interstate commerce by drawing a geographic line between New York tribal nations and out-of-state tribes and Indigenous organizations. PAC ¶¶ 251-52. Under that provision, only federally recognized tribal nations located within New York, or New York State-recognized tribal nations, may engage in name, image and likeness contracts related to the continued use of an Indigenous name, logo, or mascot in school districts. PAC ¶ 252. Out-of-state tribes and Indigenous organizations are entirely excluded from this market. *Id.* As applied here, that burden falls directly on Massapequa and impairs the MSD-NAGA Agreement, which the PAC alleges is burdened because NAGA includes Indigenous tribes, groups, and individuals outside New York. PAC ¶ 255. It further alleges resulting economic and institutional injuries to Massapequa, including loss of a valid agreement, damage to tribal

relationships, reputational and goodwill harm, operational burdens, legal exposure, and redesign and replacement costs for the name and logo. *Id.* ¶ 256.

That conclusion is not defeated by Defendants-Appellees' effort to recharacterize the regulated activity as noncommercial. They argue that § 123.4(b) cannot favor any in-state *commercial* interest because tribal nations may not receive "money, consideration, or thing of value." Br. at 63. But commerce is not limited to cash payments. *See City of Philadelphia v. New Jersey*, 437 U.S. 617, 622 (1978) ("all objects of interstate trade merit Commerce Clause protection; none is excluded from the definition of 'commerce' at the outset."). Agreements may carry commercial value through approvals, services, consulting relationships, educational support, strategic partnerships, reputational benefits, mission advancement, and other noncash consideration. NAGA illustrates the point: the PAC alleges that NAGA actively participates in agreements involving Indigenous names, imagery, and educational support to promote respectful use of Native American names and imagery, support educational programming, and advance its mission through formal agreements. PAC ¶¶ 100-09.

At the pleading stage, Massapequa need only plausibly allege that Part 123 discriminates against or substantially burdens interstate commerce. The PAC does so by alleging that § 123.4(b) privileges New York tribal entities, excludes out-of-state tribes and Indigenous organizations from providing legally effective approval,

and burdens Massapequa's agreement with NAGA because of NAGA's out-of-state affiliations.

### D. Massapequa Plausibly States an Indian Commerce Clause Claim

Massapequa also plausibly states an Indian Commerce Clause claim. PAC ¶¶ 262-76. Defendants-Appellees argue that Part 123 regulates only public schools. Br. at 65. But § 123.4(b) expressly regulates agreements between public schools and tribal nations. It determines which tribal nations may provide effective approval, limits that approval to New York tribal nations, requires that approval to have been obtained before Part 123's effective date, prohibits the exchange of "money, consideration, or thing of value," and governs revocation of tribal approval. § 123.4(b). That is not merely internal school regulation. It is state regulation of tribal approval, tribal-related agreements, and the permissible terms of those agreements.

The PAC plausibly alleges injury from that regulation. As applied here, Part 123 refuses to recognize the consent, support, and authorization provided by NAGA, a Native American organization comprised of Native Americans and tribal members, for Massapequa's continued use of Indigenous names and imagery. PAC ¶¶ 251-55; 262; 271-73. That refusal impairs the MSD-NAGA Agreement because, under Part 123, Massapequa cannot carry out its contractual obligation to continue using the Chiefs name and logo. This forces Massapequa to breach its agreement with NAGA, thereby burdening commercial activity with an Indigenous group and members. This

causes the injuries alleged in the PAC, including contractual impairment, legal exposure, reputational harm, loss of tribal-related support, compliance costs, and redesign and replacement costs. PAC ¶¶ 271-73.

That problem is not isolated to Massapequa. It reflects the systematic nature of Part 123's regulation of commerce with Indian tribes. Part 123.4(b) disables Native American and tribal-affiliated groups, whether in state or out of state, from entering new effective approval agreements with New York public schools after Part 123's effective date. It also burdens preexisting agreements by prohibiting any "money, consideration, or thing of value," thereby eliminating consideration, a core requirement of enforceable contracts under New York law. § 123.4(b). In doing so, Part 123 intrudes on the contractual rights of tribal nations and unconstitutionally burdens commerce with Indian tribes.

At the pleading stage, those allegations are sufficient. The Indian Commerce Clause assigns regulatory authority over Indian commerce and Indian affairs primarily to the federal government. As the Supreme Court has emphasized, "'virtually all authority over Indian commerce and Indian tribes' lies with the Federal Government." *Haaland*, 599 U.S. at 273 (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 62 (1996)). Because the PAC plausibly alleges that Part 123 regulates tribal-related agreements and approval rights in an area committed to

federal authority, Massapequa plausibly states an Indian Commerce Clause claim based on preemption.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's denial of leave to amend, reverse the order denying reconsideration, and remand with instructions to permit filing of the PAC and to vacate the district court's determination foreclosing any further leave to amend.

Respectfully submitted,

**THE ROBERTS LEGAL FIRM**

By: /s/ Oliver Roberts
Oliver Roberts, Esq.
163 W 71st, 1F
New York, New York 10023
Oliver@TheRobertsLegalFirm.com

- and -

Rigano LLC
Nicholas C. Rigano, Esq.
534 Broad Hollow Road, Suite 100
Melville, New York 11747
(631) 756-5900

*Attorneys for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume requirements of Second Circuit Court of Appeals Local Rule 32.1 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,719 words, as determined by Microsoft Word 16.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 16 in 14-point Times New Roman font.

Dated: June 3, 2026

By: /s/ Oliver Roberts
Oliver Roberts
*Attorney for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June 2026, I electronically filed the foregoing with the Clerk of the Court of the United States Court of Appeal for the Second Circuit by using the appellate ACMS (CM/ECF) system. All parties' attorneys are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: June 3, 2026

Respectfully submitted,

/s/ Oliver Roberts
Oliver Roberts, Esq.
The Roberts Legal Firm
163 W 71st, 1F
New York, New York 10023
Oliver@TheRobertsLegalFirm.com